```
                                              FILED
                                   CLERK, U.S. DISTRICT COURT

                                       MAR 1 1 2009

                                   CENTRAL DISTRICT OF CALIFORNIA
                                   BY                      DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2008 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>                    v.<br><br>MARTIN CHAIDEZ CHAIDEZ,<br>     aka "Plutarco Barraza<br>          Villareal,"<br>     aka "Taico,"<br>OLEGARIO CHAIDEZ VILLARREAL,<br>     aka "Tio,"<br>     aka "Mileto,"<br>     aka "97,"<br>ANDRES CHAIDEZ CHAIDEZ,<br>     aka "Chinito,"<br>FAUSTINO CHAIDEZ MEZA,<br>     aka "Tino,"<br>JESUS NOEL CHAIDEZ BELTRAN,<br>     aka "Tigrito,"<br>SANTIAGO CHAIDEZ VILLARREAL,<br>     aka "Santiago,"<br>     aka "Chago,"<br>ARMANDO AMARILLAS,<br>     aka "Federico,"<br>     aka "Kiko,"<br>DANIEL MORALES ACOSTA,<br>     aka "Pariente,"<br>MANUEL AVILES,<br>     aka "Meno,"<br>MARIO EVE BELTRAN,<br>ARTURO GOMEZ NUNEZ,<br>JOSE BARRAZA, | CR 09- **CR09-00224**<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy<br>to Distribute Controlled<br>Substances; 21 U.S.C. §§<br>841(a)(1), 841(b)(1)(A)(i),<br>841(b)(1)(A)(ii), 841(b)(1)(A)<br>(viii), 841(b)(1)(B)(ii), 841<br>(b)(1)(B)(vii): Possession<br>with Intent to Distribute and<br>Distribution of Controlled<br>Substances; 21 U.S.C. § 853:<br>Criminal Forfeiture] |

VOCS:

```
 1   RUDY LNU,                        )
     ALFREDO RUIZ,                    )
 2   ARMANDO AVENDANO,                )
     JUAN MARQUEZ COLLANTES,          )
 3        aka "Juan Cesar,"           )
          aka "Beto,"                 )
 4   ALBERTO VAZQUEZ AMAYA,           )
     LUIS M. RIVAS,                   )
 5   MIGUEL ANGEL C. RIVAS, and       )
     SERGIO CEJA PEREZ,               )
 6        aka "Jose Perez             )
             Avalos,"                 )
 7                                    )
                    Defendants.       )
 8                                    )
                                      )
 9   _____)
```

10

11          The Grand Jury charges:

12                        COUNT ONE

13                   [21 U.S.C. § 846]

14   A.    OBJECTS OF THE CONSPIRACY

15          Beginning on a date unknown to the Grand Jury and continuing

16   to on or about March 4, 2009, in Los Angeles County, within the

17   Central District of California, and elsewhere, defendants MARTIN

18   CHAIDEZ CHAIDEZ, also known as ("aka") "Plutarco Barraza

19   Villareal," aka "Taico" ("M. CHAIDEZ"); OLEGARIO CHAIDEZ

20   VILLARREAL, aka "Tio," aka "Mileto," aka "97" ("O. CHAIDEZ");

21   ANDRES CHAIDEZ CHAIDEZ, aka "Chinito" ("A. CHAIDEZ"); FAUSTINO

22   CHAIDEZ MEZA, aka "Tino" ("F. CHAIDEZ"); JESUS NOEL CHAIDEZ

23   BELTRAN, aka "Tigrito" ("J. CHAIDEZ"); SANTIAGO CHAIDEZ

24   VILLARREAL, aka "Santiago," aka "Chago" ("S. CHAIDEZ"); ARMANDO

25   AMARILLAS, aka "Federico," aka "Kiko" ("AMARILLAS"); DANIEL

26   MORALES ACOSTA, aka "Pariente" ("ACOSTA"); MANUEL AVILES, aka

27   "Meno" ("AVILES"); MARIO EVE BELTRAN ("BELTRAN"); ARTURO GOMEZ

28   NUNEZ ("NUNEZ"); JOSE BARRAZA ("BARAZZA"); RUDY LNU ("RUDY");

ALFREDO RUIZ ("RUIZ"); ARMANDO AVENDANO ("AVENDANO"); JUAN
MARQUEZ COLLANTES, aka "Juan Cesar" ("MARQUEZ"); ALBERTO VAZQUEZ
AMAYA, aka "Beto" ("AMAYA"); LUIS M. RIVAS ("L. RIVAS"); MIGUEL
ANGEL C. RIVAS ("M. RIVAS"); and SERGIO CEJA PEREZ, aka "Jose
Perez Avalos" ("PEREZ"), and others known and unknown to the
Grand Jury, conspired and agreed with each other to knowingly and
intentionally commit the following offenses as defined in Title
21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i),
841(b)(1)(A)(ii), 841(b)(1)(A)(viii), and 841(b)(1)(B)(vii):

    1.   To distribute at least five kilograms of a mixture
or substance containing a detectable amount of cocaine, a
schedule II narcotic drug controlled substance;

    2.   To distribute at least 500 grams of a mixture or
substance containing a detectable amount of methamphetamine, or
at least 50 grams of actual methamphetamine, a schedule II
controlled substance;

    3.   To distribute at least 100 kilograms of a mixture or
substance containing a detectable amount of marijuana, a schedule
I controlled substance; and,

    4.   To distribute at least one kilogram of a mixture or
substance containing a detectable amount of heroin, a schedule I
narcotic drug controlled substance.

B.   <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE</u>
    <u>ACCOMPLISHED</u>

    The objects of the conspiracy were to be accomplished in
substance as follows:

    1.   Defendant M. CHAIDEZ would oversee and coordinate the
narcotics shipments from Mexico into the United States.

- 3 -

2.    Defendants O. CHAIDEZ, A. CHAIDEZ, and ACOSTA would assist defendant M. CHAIDEZ in coordinating the transportation of large-scale narcotics shipments from Mexico into the United States, and the return of narcotics proceeds to Mexico.

3.    Defendant F. CHAIDEZ would assist defendants O. CHAIDEZ and A. CHAIDEZ in coordinating the transportation and distribution of narcotics shipments into the United States, and the return of narcotics proceeds to Mexico.

4.    Defendants AVILES and AMARILLAS would coordinate the transportation of narcotics shipments through Mexico and across the border into the United States.

5.    Defendants BELTRAN, NUNEZ, and BARRAZA would coordinate the transportation of narcotics throughout the United States, and the return of narcotics proceeds to defendants O. CHAIDEZ, A. CHAIDEZ, and ACOSTA.

6.    Defendants J. CHAIDEZ and RUIZ would assist defendants M. CHAIDEZ, O. CHAIDEZ, A. CHAIDEZ, and F. CHAIDEZ in coordinating the distribution of narcotics throughout the United States.

7.    Defendant S. CHAIDEZ would assist defendant O. CHAIDEZ in coordinating the distribution of narcotics in Texas.

8.    Defendant RUDY would be responsible for storing narcotics and narcotics proceeds for the organization.

9.    Defendant MARQUEZ would receive controlled substances from defendant BELTRAN for further distribution.

10.    Defendants AMAYA and AVENDANO would assist defendant BELTRAN in transporting narcotics throughout the United States.

11.    Defendants L. RIVAS and M. RIVAS would assist defendant

1  BARRAZA in transporting narcotics throughout the United States.

2      12.  Defendant PEREZ would assist defendant NUNEZ in

3  transporting narcotics throughout the United States.

4  C.  OVERT ACTS

5      In furtherance of the conspiracy and to accomplish the

6  objects of the conspiracy, on or about the following dates,

7  defendants M. CHAIDEZ, O. CHAIDEZ, A. CHAIDEZ, F. CHAIDEZ, J.

8  CHAIDEZ, S. CHAIDEZ, AMARILLAS, ACOSTA, AVILES, BELTRAN, NUNEZ,

9  BARAZZA, RUDY, RUIZ, AVENDANO, MARQUEZ, AMAYA, L. RIVAS,

10  M. RIVAS, and PEREZ, and other co-conspirators known and unknown

11  to the Grand Jury, committed various overt acts within the

12  Central District of California, and elsewhere, including but not

13  limited to the following:

14      November 2006 Seizure of 4.85 Kilograms of Methamphetamine

15      1.  On November 7, 2006, at approximately 2:15 p.m.,

16  defendant J. CHAIDEZ arrived in a silver Volkswagen Jetta at a

17  residence on Crossdale Avenue in Downey, California (the

18  "Crossdale residence").

19      2.  On November 7, 2006, at approximately 6:10 p.m.,

20  defendant J. CHAIDEZ exited the Crossdale residence, returned to

21  the Jetta, and departed the area.

22      3.  On November 7, 2006, at approximately 9:20 p.m.,

23  defendant J. CHAIDEZ entered room 202 of the Guest House Inn in

24  South Gate, California.

25      4.  On November 8, 2006, at approximately 10:00 a.m.,

26  defendant J. CHAIDEZ and unindicted coconspirator #1 departed

27  room 202 of the Guest House Inn and drove to a restaurant on

28  State Street in Huntington Park, California.

5. On November 8, 2006, at approximately 12:00 p.m., defendant J. CHAIDEZ and unindicted coconspirator #1 drove to a residence on the southeast corner of Brazil and Dwight Avenues, in Compton, California (the "Compton residence").

6. On November 8, 2006, at approximately 1:10 p.m., defendant RUIZ arrived in a white Ford Explorer at the Compton residence.

7. On November 8, 2006, at approximately 2:00 p.m., defendants J. CHAIDEZ and RUIZ departed the Compton residence in a red Ford Thunderbird and drove to a Ralph's Supermarket on Cherry Avenue, in Fontana, California.

8. On November 8, 2006, at approximately 3:30 p.m., defendants J. CHAIDEZ and RUIZ exited the Ralph's Supermarket and met with unindicted coconspirator #2, who took the keys for the Thunderbird from defendant J. CHAIDEZ, entered the Thunderbird, and drove to a residence on Weeping Willow Lane, in Fontana, California (the "Weeping Willow Lane residence").

9. On November 8, 2006, at approximately 4:00 p.m., unindicted coconspirator #2 departed the Weeping Willow Lane residence and returned to the Ralph's Supermarket parking lot where he returned the Thunderbird back to defendants J. CHAIDEZ and RUIZ.

10. On November 8, 2006, at approximately 4:45 p.m., while riding in the Thunderbird, defendants J. CHAIDEZ and RUIZ were in possession of approximately 4.85 kilograms of methamphetamine.

///

///

///

1      <u>February 2007 Seizure of 19.93 Kilograms of Cocaine</u>

2           11.   On February 7, 2007, at approximately 4:25 p.m.,

3   defendant BARRAZA informed unindicted coconspirator #3 that

4   defendants L. RIVAS and M. RIVAS would be picking up cocaine to

5   transport later in the evening.

6           12.   On February 7, 2007, at approximately 7:57 p.m.,

7   unindicted coconspirator #3 told defendant BARRAZA that defendant

8   RUDY knew the location where the cocaine was located and gave

9   defendant BARRAZA directions to the location.

10          13.   On February 7, 2007, at approximately 9:48 p.m.,

11  defendant BARRAZA asked defendant RUDY for the license plate

12  number of unindicted coconspirator #3's vehicle.

13          14.   On February 7, 2007, at approximately 9:59 p.m.,

14  defendant BARRAZA told unindicted coconspirator #3 that

15  defendants L. RIVAS and M. RIVAS, who were the persons

16  transporting the cocaine for unindicted coconspirator #3, were

17  already at the location.

18          15.   On February 7, 2007, at approximately 10:04 p.m.,

19  unindicted coconspirator #3 told defendant BARRAZA that the

20  individuals responsible for delivering the cocaine to defendants

21  L. RIVAS and M. RIVAS left the cocaine delivery location because

22  they were worried that unknown individuals were watching them.

23          16.   On February 7, 2007, at approximately 10:04 p.m.,

24  defendant BARRAZA told unindicted coconspirator #3 that he would

25  advise defendants L. RIVAS and M. RIVAS of the new location for

26  the cocaine delivery.

27          17.   On February 8, 2007, at approximately 8:30 a.m.,

28  defendants L. RIVAS and M. RIVAS, while driving in a green

1  tractor-trailer, were in possession of approximately 19.93

2  kilograms of cocaine.

3      18.  On February 8, 2007, at approximately 7:29 p.m.,

4  unindicted coconspirator #3 informed defendant BARRAZA that

5  defendants L. RIVAS and M. RIVAS had been stopped in Fillmore,

6  California, while in possession of the 19.93 kilograms of

7  cocaine.

8      <u>May 2007 Seizure of 76 Kilograms of Cocaine</u>

9      19.  On May 26, 2007, in Ouachita Parish, Louisiana,

10  unindicted coconspirator #4, driving a black 1997 Freightliner,

11  was in possession of 76 kilograms of cocaine hidden under the

12  lower bunk in a false compartment in the truck's cabin.

13      20.  On May 27, 2007, at approximately 11:58 a.m., defendant

14  F. CHAIDEZ told defendant O. CHAIDEZ that defendant BELTRAN

15  wanted to inform defendant J. CHAIDEZ of the cocaine seizure in

16  Louisiana.

17      21.  On May 27, 2007, at approximately 12:19 p.m., defendant

18  O. CHAIDEZ told defendant A. CHAIDEZ that defendant BELTRAN was

19  going to call defendant F. CHAIDEZ to report back concerning the

20  cocaine seizure in Louisiana.

21      22.  On May 30, 2007, at 4:15 p.m., defendants O. CHAIDEZ

22  and A. CHAIDEZ drove from the Crossdale residence, in Downey,

23  California, to a residence on Vine Street, in West Covina,

24  California (the Vine Street residence"), to meet with defendant

25  F. CHAIDEZ.

26      23.  On May 30, 2007, at approximately 6:30 p.m., defendant

27  F. CHAIDEZ departed the Vine Street residence, drove to the area

28  of Euclid Avenue and Geyer Court, in the city of Ontario,

California, and met with defendant AMAYA, who gave defendant F. CHAIDEZ a piece of paper.

24.   On May 31, 2007, at approximately 3:30 p.m., defendants O. CHAIDEZ and F. CHAIDEZ drove into a gas station on the west side of Euclid Avenue, directly south of the 60 freeway.

25.   On May 31, 2007, at approximately 3:35 p.m., defendant BELTRAN arrived in a black 1999 Chevy truck and met with defendants O. CHAIDEZ and F. CHAIDEZ.

26.   On May 31, 2007, at approximately 3:35 p.m., defendant BELTRAN, driving his truck, drove out of the gas station while being followed by defendants O. CHAIDEZ and F. CHAIDEZ, who were in a white Land Rover, and they all arrived at defendant BELTRAN's residence on Sultana Street, in Ontario, California (the "Sultana Street residence").

27.   On July 29, 2007, at approximately 2:00 p.m., defendant BELTRAN told defendant F. CHAIDEZ that defendant AMAYA had spoken with the family of the driver who was in possession of 76 kilograms of cocaine seized in Louisiana.

<u>July 2007 Cash Seizure of $436,195</u>

28.   On July 6, 2007, at approximately 1:46 p.m., defendant J. CHAIDEZ told defendant O. CHAIDEZ that defendants ACOSTA and RUDY were going to meet with defendant F. CHAIDEZ in a couple of hours.

29.   On July 6, 2007, at approximately 1:49 p.m., defendants O. CHAIDEZ and F. CHAIDEZ discussed the coordination of the arrival of controlled substances at a location in Moreno Valley, California.

30. On July 6, 2007, at approximately 6:05 p.m., defendant F. CHAIDEZ told defendant RUDY that the narcotics proceeds would be taken to another location where defendant RUDY would pick them up in order to take them to the location in Moreno Valley, California.

31. On July 6, 2007, at approximately 7:31 p.m., defendant F. CHAIDEZ told defendant O. CHAIDEZ that he had spoken with defendant RUDY and told him he would be picking up narcotics proceeds.

32. On July 6, 2007, at approximately 7:36 p.m., defendant O. CHAIDEZ told defendant F. CHAIDEZ that F. CHAIDEZ needed to call defendant RUDY because defendant BELTRAN would be arriving in 40 minutes.

33. On July 7, 2007, at approximately 2:00 p.m., defendant RUDY arrived at a residence on McDonnell Street, in Moreno Valley, California (the "McDonnell Street residence"), and met with unindicted coconspirator #5.

34. On July 7, 2007, at approximately 2:00 p.m., defendant RUDY pulled out of the garage driving a black Volkswagen Beetle ("the VW") and drove to a gas station, which was south of the 60 freeway, where he met with defendant BELTRAN.

35. On July 7, 2007, at approximately 2:15 p.m., defendant F. CHAIDEZ told defendant RUDY to return back to the McDonnell Street residence after meeting with defendant BELTRAN.

36. On July 7, 2007, at approximately 2:50 p.m., defendant BELTRAN got into the passenger side of the black VW, and defendant RUDY drove to a parking lot of a shopping mall just

south of the gas station and parked near a green Pathfinder that had dropped off defendant BELTRAN at the gas station.

37. On July 7, 2007, at approximately 2:50 p.m., defendant BELTRAN approached the green Pathfinder, took a black medium sized duffle bag out of the Pathfinder, and gave it to defendant RUDY, who placed it in the trunk of the VW.

38. On July 7, 2007, at approximately 3:43 p.m., defendant F. CHAIDEZ asked defendant O. CHAIDEZ the amount of narcotics proceeds that were owed to defendant ACOSTA, and defendant O. CHAIDEZ told defendant J. CHAIDEZ to tell defendant ACOSTA that the proceeds also belonged to unknown others.

39. On July 7, 2007, at approximately 4:11 p.m., defendants F. CHAIDEZ and RUDY discussed the amount of narcotics proceeds defendant RUDY had received from defendant BELTRAN.

40. On July 7, 2007, at approximately 11:00 p.m., unindicted coconspirator #5 was in possession of approximately $436,195 in narcotics proceeds.

41. On July 8, 2007, at approximately 7:59 a.m., defendant J. CHAIDEZ informed defendant O. CHAIDEZ that the narcotics proceeds had been seized from the McDonnell Street residence.

42. On July 8, 2007, at approximately 10:21 a.m., defendant O. CHAIDEZ told defendant F. CHAIDEZ to have defendant ACOSTA call him so that he could tell him that they did not steal his narcotics proceeds.

43. On July 8, 2007, at approximately 10:48 a.m., defendant O. CHAIDEZ explained to defendant ACOSTA that the McDonnell Street residence was a new location to store narcotics and narcotics proceeds and that O. CHAIDEZ and F. CHAIDEZ had not

- 11 -

1   stolen the narcotics proceeds that belonged to defendant ACOSTA.

2       44.   On July 8, 2007, at approximately 1:50 p.m., defendant

3   RUDY explained to defendant F. CHAIDEZ that the narcotic proceeds

4   stashed at the McDonnell Street residence had been seized.

5       September 2007 Seizure of 1.14 kilograms of Heroin and Cash

6       Seizure of $31,524

7       45.   On September 5, 2007, at approximately 10:55 a.m.,

8   defendant BELTRAN departed the Sultana Street residence in a

9   white Chevrolet truck and drove to a gas station in Chino,

10  California, and met with defendant MARQUEZ.

11      46.   On September 5, 2007, at approximately 11:10 a.m.,

12  defendant BELTRAN drove to a residence on East End Avenue in

13  Ontario, California (the "East End residence"), while defendant

14  MARQUEZ drove to a shopping center located on Philadelphia and

15  Reservoir Avenues.

16      47.   On September 5, 2007, at approximately 11:25 a.m.,

17  defendant BELTRAN departed the East End Avenue residence, drove

18  to the shopping center where defendant MARQUEZ was waiting, and

19  picked up defendant MARQUEZ.

20      48.   On September 5, 2007, at approximately 11:35 a.m.,

21  defendant MARQUEZ got out of defendant BELTRAN's white Chevrolet

22  truck, got into his vehicle, and drove to a residence on Nadeau

23  Street in Los Angeles, California.

24      49.   On September 6, 2007, defendant MARQUEZ was in

25  possession of 1.14 kilograms of heroin and $31,524 in U.S.

26  currency.

27      September 2007 Seizure of 60 kilogram of Cocaine

28      50.   On September 10, 2007, at approximately 8:00 a.m.,

- 12 -

1  defendant AVENDANO arrived at the Sultana Street residence.

2      51.   On September 10, 2007, at approximately 8:50 a.m.,

3  defendants BELTRAN and AVENDANO departed the Sultana Street

4  residence in a black Chevrolet truck and drove to a residence on

5  Redwood Avenue, in Fontana, California (the "Redwood Avenue

6  residence").

7      52.   On September 10, 2007, at approximately 9:30 a.m.,

8  defendants BELTRAN and AVENDANO removed two large duffle bags

9  from the bed of the black Chevrolet truck and placed them in a

10  green Freightliner tractor-trailer.

11      53.   On September 10, 2007, at approximately 9:30 a.m.,

12  defendants BELTRAN and AVENDANO began to remove cocaine from the

13  large duffle bags and place them in a secret compartment located

14  underneath the passenger side of the green Freightliner tractor-

15  trailer.

16      54.   On September 10, 2007, at approximately 2:25 p.m.,

17  defendant BELTRAN entered the driver's side of the green

18  Freightliner tractor-trailer and departed the Redwood Avenue

19  residence in the green Freightliner tractor-trailer while

20  defendant AVENDANO followed in the black Chevrolet truck.

21      55.   On September 10, 2007, at approximately 3:30 p.m.,

22  defendant BELTRAN was in possession of approximately 60 kilograms

23  of cocaine.

24      October 2007 Seizure of 833 Kilograms of Marijuana

25      56.   On September 4, 2007, at approximately 7:56 p.m.,

26  defendant O. CHAIDEZ and unindicted coconspirator #6 discussed a

27  shipment of narcotics that was being sent to defendant O. CHAIDEZ

28  from Mexico, and unindicted coconspirator #6 told defendant O.

1  CHAIDEZ that approximately 1,000 units of narcotics would be sent

2  to defendant O. CHAIDEZ in the United States.

3      57.  On September 8, 2007, at approximately 2:01 p.m.,

4  defendant O. CHAIDEZ informed unindicted coconspirator #6 that

5  the narcotics shipment was on its way into the United States.

6      58.  On September 12, 2007, at approximately 1:30 p.m.,

7  defendant AMARILLAS told defendant O. CHAIDEZ that they would

8  need to make arrangements to transport the narcotics using

9  multiple transporters.

10     59.  On September 13, 2007, at approximately 2:10 p.m.,

11  defendants O. CHAIDEZ and AVILES discussed the amount of

12  narcotics to be brought into the United States, and defendant O.

13  CHAIDEZ instructed defendant AVILES to have unindicted

14  coconspirator #6 inspect the narcotics that were being sent.

15     60.  On September 16, 2007, at approximately 1:01 p.m.,

16  defendant AVILES informed defendant O. CHAIDEZ that the narcotics

17  had been loaded into a tractor-trailer and were ready to be sent

18  to the United States.

19     61.  On September 26, 2007, at approximately 4:00 p.m.,

20  defendant O. CHAIDEZ informed defendant AMARILLAS that the

21  narcotics shipment would arrive in the United States the

22  following week.

23     62.  On September 28, 2007, at approximately 2:45 p.m.,

24  defendant AMARILLAS asked defendant S. CHAIDEZ where defendant O.

25  CHAIDEZ was located.

26     63.  On September 28, 2007, at approximately 3:13 p.m.,

27  unindicted coconspirator #7 informed defendant O. CHAIDEZ that

28

they were ready to transport the narcotics once they arrived in the United States.

64. On September 28, 2007, at approximately 6:23 p.m., defendant O. CHAIDEZ told unindicted coconspirator #6 that he would send the narcotic proceeds to Mexico for the narcotics that were being sent to the United States.

65. On September 29, 2007, at approximately 7:07 a.m., defendant O. CHAIDEZ informed unindicted coconspirator #7 that the transportation of the narcotics could begin by the next day.

66. On September 30, 2007, at approximately 9:33 a.m., defendant AMARILLAS asked defendant S. CHAIDEZ to meet so that they could determine how many units of narcotics were to be given to defendant S. CHAIDEZ.

67. On September 30, 2007, at approximately 10:05 a.m., defendant O. CHAIDEZ informed unindicted coconspirator #7 that he had spoken with defendant S. CHAIDEZ and they would be ready to transport the narcotics soon.

68. On September 30, 2007, at approximately 2:53 p.m., defendant O. CHAIDEZ told defendant AMARILLAS that the narcotics would arrive early the next day.

69. On September 30, 2007, at approximately 6:20 p.m., defendant O. CHAIDEZ asked unindicted coconspirator #6 if he knew anyone in Chicago, Illinois, who could help him distribute narcotics.

70. On October 1, 2007, at approximately 10:52 a.m., defendant O. CHAIDEZ informed defendant AMARILLAS that he was waiting for confirmation that the narcotics had arrived in the United States.

71. On October 1, 2007, at approximately 2:17 p.m., defendant O. CHAIDEZ and unindicted coconspirator #8 discussed the delivery of narcotics in North Carolina.

72. On October 1, 2007, at approximately 3:08 p.m, defendant S. CHAIDEZ asked defendant AMARILLAS if he had spoken to defendant O. CHAIDEZ regarding the narcotics that were being sent to the United States from Mexico, and defendant AMARILLAS told defendant S. CHAIDEZ that he had and that defendant O. CHAIDEZ was feeling good about the pending narcotics shipment.

73. On October 1, 2007, at approximately 5:51 p.m., defendant O. CHAIDEZ asked if defendant S. CHAIDEZ had informed a narcotics customer that the shipment had arrived.

74. On October 2, 2007, at approximately 3:14 p.m., defendant S. CHAIDEZ informed defendant AMARILLAS the marijuana was being loaded into vehicles.

75. On October 2, 2007, at approximately 3:25 p.m., defendant AMARILLAS told defendant S. CHAIDEZ to hurry up and get to the location where the marijuana was being loaded.

76. On October 2, 2007, at approximately 4:58 p.m., defendant O. CHAIDEZ asked defendant AMARILLAS if the narcotics shipment had arrived, defendant AMARILLAS responded that it had arrived, and defendant O. CHAIDEZ told defendant AMARILLAS to call him if anything came up.

77. On October 2, 2007, at approximately 3:25 p.m., unindicted coconspirator #9, driving a white Lexus, departed a residence on Flamingo Street in McAllen, Texas, in possession of approximately 220 kilograms of marijuana.

78.   On October 2, 2007, at approximately 8:12 p.m.,
defendant AMARILLAS informed defendant S. CHAIDEZ that the police
had searched his home.

79.   On October 2, 2007, at approximately 11:35 p.m.,
unindicted coconspirator #10, driving a white Ford van, departed
a residence on Orchid Avenue in McAllen, Texas (the "Orchid
Avenue residence"), in possession of approximately 311.8
kilograms of marijuana.

80.   On October 2, 2007, at approximately 11:59 p.m., at the
Orchid Avenue residence, unindicted coconspirator #11 possessed
301.8 kilograms of marijuana.

81.   On October 3, 2007, at approximately 9:21 a.m.,
defendant F. CHAIDEZ informed unindicted coconspirator #8 to tell
his customers in North Carolina that they would not be receiving
narcotics because the shipment had been seized in McAllen, Texas,
and defendant O. CHAIDEZ needed to determine what went wrong.

   February 2008 Seizure of 212 Kilograms of Marijuana and Cash
   Seizure of $17,000

82.   On February 17, 2008, at approximately 8:35 a.m.,
defendant NUNEZ told defendant PEREZ that the narcotics would
arrive by 10:30 a.m.

83.   On February 17, 2008, at approximately 11:01 a.m.,
defendant PEREZ told defendant NUNEZ that 71 units of narcotics
had arrived.

84.   On February 18, 2008, at approximately 3:27 p.m.,
defendant NUNEZ informed defendant M. CHAIDEZ that he had
approximately $400,000 in narcotic proceeds that still needed to
be delivered to defendant M. CHAIDEZ.

- 17 -

85. On February 18, 2007, at approximately 7:36 p.m., defendant NUNEZ told defendant PEREZ that the narcotics would not be picked up until the next morning.

86. On February 19, 2008, at approximately 12:15 p.m., unindicted coconspirator #12, who was in a maroon Ford truck, departed a residence on Shamel Court in Riverside, California, and was in possession of approximately 467 pounds of marijuana.

87. On February 19, 2008, at approximately 2:30 p.m., unindicted coconspirator #13 was in possession of approximately $17,000 that defendant NUNEZ had provided to him.

### February 2008 Seizure of 217.6 grams of Cocaine, Seizure of 3.38 kilograms of Methamphetamine, and Seizure of 2.35 kilograms of Heroin

88. On February 27, 2008, at approximately 12:18 p.m., defendant J. CHAIDEZ told unindicted coconspirator #1 that he had just left defendant A. CHAIDEZ' residence and asked unindicted coconspirator #1 to leave her residence in Inglewood, California (the "Inglewood residence"), for a few days.

89. On February 27, 2008, at approximately 1:25 p.m., defendant A. CHAIDEZ instructed defendant F. CHAIDEZ to meet with defendant J. CHAIDEZ at the location where the drugs were stored.

90. On February 27, 2008, at approximately 2:07 p.m., defendant F. CHAIDEZ informed defendant A. CHAIDEZ that the narcotics had been picked up.

91. On February 27, 2008, at approximately 2:57 p.m., defendants A. CHAIDEZ and F. CHAIDEZ discussed the movement of narcotics to the Inglewood residence.

92.  On February 28, 2008, at approximately 12:36 a.m., defendant F. CHAIDEZ told defendant J. CHAIDEZ that the police were near the Inglewood residence.

93. On February 28, 2008, defendants O. CHAIDEZ, A. CHAIDEZ, F. CHAIDEZ, and J. CHAIDEZ possessed approximately 217.6 grams of cocaine, 3.38 kilograms of methamphetamine (actual), and 2.35 kilograms of heroin.

94.  On February 28, 2008, at approximately 9:36 a.m., defendant J. CHAIDEZ told defendant F. CHAIDEZ that the narcotics stored at the Inglewood residence were missing and he would have to explain why the narcotics were missing to defendant A. CHAIDEZ.

95.  On February 28, 2008, at approximately 9:39 p.m., defendant J. CHAIDEZ told defendant A. CHAIDEZ that the narcotics stored at the Inglewood residence were missing.

96.  On February 28, 2008 at approximately 9:49 a.m., defendant J. CHAIDEZ told defendant A. CHAIDEZ that he entered the Inglewood residence and did not find the narcotics that were being stored at the residence.

97.  On February 28, 2008, at approximately 8:13 p.m., defendant A. CHAIDEZ told a family member that he was going to Mexico.

July 2008 Seizure of 4,946.7 grams of Cocaine

98.  On July 8, 2008, at approximately 10:40 a.m., unindicted coconspirator #14 departed defendant NUNEZ' residence on Orange Avenue in La Puente, California (the "Orange Avenue residence"), and traveled to a residence on Beckner Street (the "Beckner Street residence").

99.   On July 8, 2008, at approximately 11:25 a.m., defendant NUNEZ walked out of the Orange Avenue residence towards the rear of the location, got in a white Ford Explorer, drove to the Beckner Street residence and waited until unindicted coconspirator #14 entered the white Ford Explorer, and drove to a car wash located on 57th Street and Western Avenue, in the City of Los Angeles, where defendant NUNEZ and unindicted coconspirator #14 met with another individual.

100.   On July 8, 2008, at approximately 2:30 p.m., defendant NUNEZ, in the white Explorer, and unindicted coconspirator #15, in a blue Dodge Stratus, drove to a Chevron gas station on Vincent Boulevard, just north of Interstate 10 in West Covina, California.

101.   On July 8, 2008, at approximately 3:12 p.m., defendant NUNEZ got in the blue Dodge Stratus with unindicted coconspirator #15 and drove to an apartment complex on Garvey Avenue in West Covina, California, and delivered a piece of carry-on luggage, which contained approximately five kilograms of cocaine.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii)]

On or about November 8, 2006, in San Bernardino County, within the Central District of California, defendants JESUS NOEL CHAIDEZ BELTRAN, also known as "Tigrito," and ALFREDO RUIZ, knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 5,807 grams, of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii).

COUNT THREE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)]

On or about February 8, 2007, in Ventura County, within the Central District of California, defendants JOSE BARRAZA, RUDY LNU, LUIS M. RIVAS, and MIGUEL ANGEL C. RIVAS knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 19.93 kilograms, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(ii).

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i)]

On or about September 6, 2007, in San Bernardino County, within the Central District of California, defendant MARIO EVE BELTRAN knowingly and intentionally distributed at least one kilogram, that is, approximately 1.14 kilograms, of a mixture or substance containing a detectable amount of heroin, a schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i).

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i)]

On or about September 6, 2007, in San Bernardino County, within the Central District of California, JUAN MARQUEZ COLLANTES, also known as "Juan Cesar," knowingly and intentionally possessed with intent to distribute at least one kilogram, that is, approximately 1.14 kilograms, of a mixture or substance containing a detectable amount of heroin, a schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i).

COUNT SIX

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)]

On or about September 10, 2007, in San Bernardino County, within the Central District of California, defendants MARIO EVE BELTRAN and ARMANDO AVENDANO knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 60 kilograms, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(ii).

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii)]

On or about February 19, 2008, in Riverside County, within the Central District of California, defendants MARTIN CHAIDEZ CHAIDEZ, also known as ("aka") "Plutarco Barraza Villareal," aka "Taico," ANDRES CHAIDEZ CHAIDEZ, aka "Chinito," ARTURO GOMEZ NUNEZ, and SERGIO CEJA PEREZ, aka "Jose Perez Avalos," knowingly and intentionally possessed with intent to distribute at least 100 kilograms, that is, approximately 212.27 kilograms, of a mixture or substance containing a detectable amount of marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(vii).

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii)]

On or about February 28, 2008, in Los Angeles County, within the Central District of California, defendants OLEGARIO CHAIDEZ VILLARREAL, aka "Tio," aka "Mileto," aka "97," ANDRES CHAIDEZ CHAIDEZ, aka "Chinito," FAUSTINO CHAIDEZ MEZA, aka "Tino," and JESUS NOEL CHAIDEZ BELTRAN, aka "Tigrito," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 3,380 grams, of methamphetamine (actual), a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii).

COUNT NINE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i)]

On or about February 28, 2008, in Los Angeles County, within the Central District of California, defendants OLEGARIO CHAIDEZ VILLARREAL, aka "Tio," aka "Mileto," aka "97," ANDRES CHAIDEZ CHAIDEZ, aka "Chinito," FAUSTINO CHAIDEZ MEZA, aka "Tino," and JESUS NOEL CHAIDEZ BELTRAN, aka "Tigrito," knowingly and intentionally possessed with intent to distribute at least one kilogram, that is, approximately 2,350 grams, of a mixture of substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i).

COUNT TEN

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)]

On or about July 8, 2008, in Los Angeles County, within the Central District of California, defendant ARTURO GOMEZ NUNEZ knowingly and intentionally distributed at least 500 grams, that is, approximately 4,946.7 grams, of a mixture of substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(ii).

COUNT ELEVEN

[21 U.S.C. § 853]

1.    Pursuant to Title 21, United States Code, Section 853, a defendant who is convicted of any offense set forth in Counts One through Ten of this Indictment shall forfeit to the United States the following property:

          (a)   All right, title, and interest in any and all property --

                  (i)   constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses described in Counts One through Ten; and

                 (ii) any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of these offenses.

          (b)   A sum of money equal to the total value of the property described in paragraph 1(a)(i), representing the amount of proceeds obtained as a result of the offenses, less the value of actual proceeds forfeited, for which the defendant is jointly and severally liable with his co-conspirators.

2.    Pursuant to Title 21, United States Code, Section 853(p), the defendant shall forfeit substitute property, up to the value of the total amount described in paragraph 1(a), if, as the result of any act or omission of the defendant, said

- 30 -

property, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/

_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

*Christine C. Ewell*

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Violent and Organized Crime Section


PETER A. HERNANDEZ
Assistant United States Attorney
Deputy Chief, Violent and Organized Crime Section

- 31 -